DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Arnold L. Hampton, commenced this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him an award for loss of vision in his right eye and ordering the commission to find that he is entitled to an award for total loss of vision in that eye.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that relator's request for a writ of mandamus should be denied.
 {¶ 3} Arnold L. Hampton ("claimant") has filed the following objections to the magistrate's decision:
1. The Magistrate erred in finding that the Commission properly denied Hampton's request for allowance of total loss of vision benefits.
2. The Magistrate erred by weighing facts and interpreting the evidence in finding that the beginning of a cataract in claimant's right eye had not advanced to such a stage that it reduced his vision enough to warrant an award for permanent partial disability compensation.
 {¶ 4} There are no objections to the magistrate's findings of fact and, upon review of the file, we find that the facts are fully supported by the evidence.
 {¶ 5} An award for loss of vision is a percentage of permanent partial disability ("PPD") as provided for in R.C. § 4123.57(B) which provides, in pertinent part, as follows:
For the loss of the sight of an eye, one hundred twenty-five weeks.
For the permanent partial loss of sight of an eye, the portion of one hundred twenty-five weeks as the administrator in each case determines, based upon the percentage of vision actually lost as a result of the injury or occupational disease, but, in no case shall an award of compensation be made for less than twenty-five per cent loss of uncorrected vision. "Loss of uncorrected vision" means the percentage of vision actually lost as the result of the injury or occupational disease.
 {¶ 6} The evidence is clear that, in applying this formula to the percentage of loss of vision to claimant's right eye, there was less than a 25 percent loss as stated by Dr. Thomas B. Dankworth and Dr. Leonard Jacobson. Even if the record contains evidence which would indicate over a 25 percent loss of vision, there would be no abuse of discretion on the part of the commission since there is ample evidence that the loss of vision was less than 25 percent.
 {¶ 7} Claimant's second objection concerns the finding that there was the beginning of a cataract in his right eye that was connected to the industrial injury. The magistrate stated that "the cataract has not advanced to such a stage that it reduced his vision enough to warrant an award of PPD compensation." Claimant misses the point of the magistrate in that statement. The statement means that, even with the beginning of a cataract, it had not advanced to the stage where the eye, considered as a whole after the retina detachment was surgically repaired, amounted to a 25 percent or more loss of vision in that right eye. As we held in our case of State ex rel. Gen. Elec. Corp. v. Indus. Comm., Franklin App. No. 02AP-1291, 2004-Ohio-105, if there has been a surgical correction that renders a situation less than permanent, claimant is precluded from recovering benefits for a permanent loss under R.C. 4123.57. The loss must then be determined not at the point of entry but, rather, at the point of reattachment and recovery.
 {¶ 8} The possible or even probable need for a cataract removal operation in the future is not an issue before us at this time. As we stated in Gen. Elec. Corp., at ¶ 7, "[t]o the extent that any problems should arise in the future with respect to claimant's vision, claimant may seek compensation under R.C. 4123.57(B) at that time."
 {¶ 9} Following an independent review, pursuant to Civ. R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's findings of fact and conclusions of law. In accordance with the magistrate's decision, claimant's objections are overruled, and the request for a writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
Petree and French, JJ., concur.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Arnold L. Hampton, : Relator, : v. : No. 04AP-227 Industrial Commission of Ohio : (REGULAR CALENDAR) and Downing Displays Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on July 29, 2004 Marinakis Law Office, and Angela D. Marinakis, for relator.
Jim Petro, Attorney General, and Stephen D. Plymale, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 10} Relator, Arnold L. Hampton, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him an award for loss of vision in his right eye and ordering the commission to find that he is entitled to an award for total loss of vision in his right eye.
Findings of Fact:
 {¶ 11} 1. Relator sustained a work-related injury on December 3, 1996, and his claim has been allowed for: "traumatic vitreous hemorrhage of right eye; contusion right eyeball; partial right eyeball tear; right ocular globe rupture; detached retina right eye."
 {¶ 12} 2. Relator's retinal detachment was surgically repaired in December 1996.
 {¶ 13} 3. On February 27, 2002, relator filed a motion requesting that his claim be additionally allowed for "traumatic cataract right eye," and further requested that he be granted a 30 percent loss of vision award.
 {¶ 14} 4. In support of his motion, relator provided the results of an eye examination performed by Dr. Thomas B. Dankworth and a C-9 signed by Dr. Dankworth dated March 13, 2001. Dr. Dankworth noted that relator's right pupil was distorted from the injury and scars were found in the retina as well as the beginning of a traumatic cataract which he opined was related to the industrial injury. Dr. Dankworth noted further that vision in relator's right eye was 20/50¯.
 {¶ 15} 5. Relator was also examined by Dr. Leonard Jacobson on June 7, 2002, at the request of the Ohio Bureau of Workers' Compensation ("BWC"). Dr. Jacobson opined that, without correction, relator's vision in his right eye was 20/80¯, and that this corresponded to an 18 percent loss of vision of the right eye. Dr. Jacobson noted further that the traumatic cataract was directly related to the industrial injury.
 {¶ 16} 6. Relator's motion was heard before a district hearing officer ("DHO") on July 23, 2002, and resulted in an order amending his claim to include "traumatic cataract right eye," but denied relator's request for compensation as follows:
The District Hearing Officer finds that the claimant has suffered a[n] 18% loss of vision in the right eye as a result of the industrial accident of 12-3-96 based on the report of Dr. Jacobson.
However, the claimant is not eligible to receive an award for loss of vision pursuant to Ohio Revised Code 4123.57 unless the claimant's loss of vision is greater than 25%.
The District Hearing Officer finds that the claimant relies on the report of Dr. Dankworth dated 8-24-00 to establish that the claimant has suffered a 30% loss of vision.
The District Hearing Officer finds that the medical evidence from Dr. Dankworth does not establish a 30% loss of vision. Rather, Dr. Dankworth indicates that the claimant has an uncorrected vision of 20/50 [sic] which equals only to a 23.5 loss of vision based on the Industrial Commission loss of vision chart.
The claimant argues that the claimant is entitled to an award for the total loss of vision pursuant to the Bureau of Workers' Compensation policy.
Specifically, the claimant argues that the fact that his claim is allowed for a traumatic cataract entitles the claimant to an award for the total loss of vision of the right eye.
The District Hearing Officer rejects this argument.
The District Hearing Officer finds that the Bureau of Workers' Compensation policy cited to does not constitute legal authority for the granting of the requested award.
Further, the medical evidence does not indicate that the claimant suffered the total loss of vision in his right eye prior to his corrective surgery.
 {¶ 17} 7. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on September 9, 2002. The SHO modified the prior DHO order. The SHO determined that relator's claim should be additionally allowed for "traumatic cataract of right eye" and further denied relator's request for loss of vision in his right eye under R.C. 4123.57. The SHO provided the following rationale:
The Staff Hearing Officer finds that the claimant has suffered a loss of vision in right eye of less than 30% as a result of the industrial injury on 12-3-96 based on [the] report of Dr. Jacobson. The Staff Hearing Officer finds that the claimant is not eligible to receive an award pursuant to Ohio Revised Code 4123.57 unless the claimant's loss of uncorrected vision is greater than 25%.
This order is based on [the] report of Dr. Jacobson.
The decision of [the] District Hearing Officer dated 7-26-02 is affirmed in all other respects.
 {¶ 18} 8. Further appeal was refused by order of the commission mailed October 3, 2002.
 {¶ 19} 9. Thereafter, relator filed the instant mandamus action in this court. Conclusions of Law:
 {¶ 20} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 21} In this mandamus action, relator asserts that the commission abused its discretion in not granting him a 30 percent loss of vision award, as well as an award for total loss of vision of his right eye, and that the commission applied the incorrect standard in determining his loss of vision award. For the reasons that follow, this magistrate finds that relator's arguments are not well-taken.
 {¶ 22} An award for loss of vision as a percentage of permanent partial disability ("PPD") is provided for in R.C. 4123.57(B), which provides, in pertinent part, as follows:
For the loss of the sight of an eye, one hundred twenty-five weeks.
For the permanent partial loss of sight of an eye, the portion of one hundred twenty-five weeks as the administrator in each case determines, based upon the percentage of vision actually lost as a result of the injury or occupational disease, but, in no case shall an award of compensation be made for less than twenty-five per cent loss of uncorrected vision. "Loss of uncorrected vision" means the percentage of vision actually lost as the result of the injury or occupational disease.
 {¶ 23} As indicated above, relator needed to establish at least a 25 percent loss of uncorrected vision before he would be entitled to any PPD compensation under R.C. 4123.57(B). Both the DHO and the SHO relied upon the November 3, 1996 report of Dr. Jacobson who opined that relator had an 18 percent loss of vision in his right eye as a result of the industrial injury. Clearly, 18 percent is less than 25 percent. Relator points to that portion of the SHO order where the SHO noted that relator had suffered a loss of vision in the right eye of less than 30 percent and contends that the commission applied an incorrect standard, requiring him to prove a 30 percent loss of vision before being entitled to any compensation. This magistrate disagrees with relator's analysis. It must be remembered that, in his motion, relator requested both a 30 percent loss of vision award as well as a total loss of vision award. The SHO found that relator had not established that he had a 30 percent loss of vision award and then correctly noted the proper standard wherein he noted that "the claimant is not eligible to receive an award pursuant to Ohio Revised Code 4123.57 unless the claimant's loss of uncorrected vision is greater than 25%." As such, contrary to relator's assertions, the commission did not imply an improper standard in determining that he was not entitled to an award under the statute for, at least, 25 percent loss of vision award. Furthermore, as the DHO had noted, even had the commission relied upon the report of his treating physician, Dr. Dankworth, he had only established a 23.5 percent loss of vision. As such, this first argument of relator fails.
 {¶ 24} Relator also contends that he is eligible for a total loss of vision award pursuant to State ex rel. Kroger Co. v. Stover (1987),31 Ohio St.3d 229, and this court's opinions in State ex rel Pethe v.Indus. Comm., Franklin App. No. 02AP-1202, 2003-Ohio-6832, and State exrel. General Electric Corp. v. Indus. Comm., Franklin App. No. 02AP-1291, 2004-Ohio-105. Relator asserts that, the retinal detachment surgery and the mere fact that he has a cataract established that his uncorrected vision is comparable to a total loss vision and that by virtue of the fact that he had surgery to reattach his retina and currently has a cataract which, at some point in time, may need to be replaced, he has established entitlement to an award. Relator cites the commission's manual and its indication that a cataract entitles a claimant to an automatic total loss of vision award. This magistrate disagrees.
 {¶ 25} In Kroger, the claimant had sustained severe burns and scaring to his corneas as a result of an industrial injury and underwent a corneal transplant to his right eye in 1979. The court noted that, following the successful transplant, the claimant had some vision with glasses provided there was bright light. However, the court noted that the evidence showed that, on a cloudy or rainy day, or in twilight or dawn light, the claimant was not able to see more than six feet even after the corneal transplant. Id. at 234, fn. 5. Furthermore, the claimant had not attempted a transplant for the left eye and the court observed that the record included evidence that rejection of a donated cornea was possible.
 {¶ 26} The Ohio Supreme Court upheld the commission's award of PPD compensation under former R.C. 4123.57(C), for total loss of vision to claimant's left eye, which had not been surgically repaired at the time of the hearing, and 80 percent loss of vision for his right eye which had the corneal transplant. The court explicitly recognized that advances in medical technology might, at some future point in time, support the conclusion that a corneal transplant provided a permanent improvement of vision similar to the way in which surgery could repair a broken bone or restore use of a limb. Id. at 234.
 {¶ 27} For years, this court continued to apply the rationale fromKroger, and found that, where a claimant showed that he had lost his vision due to a cataract and required corneal transplant surgery, the commission was to consider the claimant's vision prior to the corneal transplant in making its determination under the statute. However, recently, in General Electric, this court adopted the magistrate's decision and found that cataract surgery eliminates any actual permanent loss of vision suffered as a result of an industrial injury. In doing so, this court recognized the advances in eye surgery since Kroger was decided in 1987.
 {¶ 28} In the present case, relator requests that this court do two things: (1) consider that he had a total loss of vision prior to the reattachment of his retina; and (2) consider that he will have a total loss of vision because it has been established that he has a cataract. This magistrate disagrees.
 {¶ 29} First, surgery to reattach a retina has never been utilized to warrant an award for total loss of vision in an eye. Relator can point to no case where such an award was made because none exist. Reattaching a retina has never been considered on equal footing with replacement of a cornea and, as the record shows, there is a 90 percent chance that the surgery will be successful. As such, the commission did not abuse its discretion in considering, as relator's uncorrected vision, the vision that he had following the surgery to reattach his retina.
 {¶ 30} The question then comes down to whether or not relator presented evidence that, following the reattachment of his retina, relator had demonstrated that there was a 100 percent loss of vision or, at least, greater than a 25 percent loss of vision, due to the fact that his claim had now been allowed for "traumatic cataract right eye." This magistrate finds that it does not.
 {¶ 31} The record shows that relator has the beginning of a cataract in his right eye. The cataract has not advanced to such a stage that it has reduced his vision enough to warrant an award for PPD compensation. Because this magistrate finds that the commission did not abuse its discretion in considering the difference between relator's vision following the reattachment of his retina and his current vision, the report of Dr. Jacobson remains "some evidence" upon which the commission could rely. In that report, Dr. Jacobson opined that relator had an 18 percent loss of vision in his right eye. Inasmuch as 18 percent is less than 25 percent, the commission had some evidence before it upon which it relied in denying his award for compensation under R.C. 4123.57. Credibility and weight of evidence are clearly within the discretion of the commission as fact finder. Teece, supra. The commission chose to rely upon the report of Dr. Jacobson and not the report of Dr. Dankworth and, inasmuch as the report of Dr. Jacobson constitutes some evidence upon which the commission could rely, the commission did not abuse its discretion in doing so. Furthermore, the commission's manual does not apply when it is contrary to law. In General Electric, this court held that cataract surgery eliminates any actual permanent loss of vision suffered as a result of an industrial injury.
 {¶ 32} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his application for an award of PPD compensation for either a 25 percent loss of vision of his right eye or a total loss of vision of his right eye and relator's request for a writ of mandamus should be denied.
 /s/ Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS MAGISTRATE